Walter G. Hougland, Jr. v. Commissioner. Estate of W. G. Hougland, McGhee Hougland (Mrs. W. G. Hougland), Executrix v. Commissioner. Walter G. Hougland, Jr. (Transferee Liability) v. Commissioner. McGhee Hougland (Transferee Liability) v. Commissioner.
Walter G. Hougland, Jr. v. Commissioner
Docket Nos. 4564, 4565, 4997, 4998.
United States Tax Court
1946 Tax Ct. Memo LEXIS 89; 5 T.C.M. (CCH) 776; T.C.M. (RIA) 46215; September 6, 1946
*89 In about 1937, petitioner, Walter G. Hougland, Jr., with the cash and credit assistance of his father, purchased a towboat for $158,000, and engaged in the river transportation business under the name "Hougland's". The business became profitable. In August 1939, he sold a half interest to his mother under an arrangement whereby she delivered to him her note for one-half of the then depreciated cost of the towboat, and assumed joint liability on three notes, aggregating $30,000, petitioner had given his father for the cash he borrowed. At the time of the transfer it was understood that the liability of the mother was to be discharged out of her share of the profits of the business. On January 1, 1940, petitioner and his mother together "sold" a one-third interest in "Hougland's" to petitioner's wife, Dorothy, under substantially similar arrangements as had been made in the case of the mother. At the time of such transfers petitioner's mother and his wife had no funds of their own. Petitioner, after the transfers, continued as prior thereto to manage and control the business. Neither the mother nor the wife contributed any vital services to the creation of the business. Held, respondent *90 properly included all the income from the partnership "Hougland's" in the year 1940, in the gross income of petitioner, Walter G. Hougland, Jr. The useful life of certain river craft for depreciation purposes is fixed at 25 years. Charles I. Dawson, Esq., 1805 Kentucky Home Life Bldg., Louisville, Ky., for the petitioners. John H. Pigg, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve income tax and transferee liabilities. Docket No. 4564 involves income tax deficiency for the taxable year 1940 in the amount of $31,902.17. Docket No. 4565 places in controversy the amount of $1,401.99, of a total income tax deficiency of $8,480.05, for the taxable year *91 1940. Docket Nos. 4997 and 4998 involve transferee liability with respect to the deficiency involved in Docket No. 4565. The contested issues are: (1) whether the business carried on under the name "Hougland's" was a valid partnership for income tax purposes; and (2) the amount of depreciation properly deductible. Petitioners in Docket Nos. 4997 and 4998 concede transferee liability in the event the deficiency determined by the respondent in Docket No. 4565 is sustained. The cases were submitted on oral testimony, documentary proof, oral admissions and stipulations at the hearing. Findings of Fact Walter G. Hougland, Jr. (hereinafter referred to as "petitioner"), is the son of Walter G. Hougland and McGhee Hougland, the petitioner in Docket Nos. 4565 and 4998. Petitioner is a young man 29 years of age, residing and having his place of business at Owensboro, Kentucky. Petitioner's father, W. G. Hougland, died testate on November 7, 1939. The income tax returns of petitioner and of the Estate of W. G. Hougland for the taxable period were filed with the collector of internal revenue for the district of Kentucky. When petitioner was about 15 years of age he began working for his *92 father who, at the time of his death, had been engaged in the river transportation business for approximately 50 years. Petitioner and his wife, Dorothy Nell Hougland, were married June 15, 1933. To this union three children were born. Petitioner and his wife were divorced on or about January 20, 1944. In the early part of 1937, petitioner unsuccessfully attempted to induce his father to buy an additional towboat, whereupon he prevailed upon his father to assist him in acquiring such a boat. A contract was made with the Nashville Bridge Company for the construction of a towboat at a cost of approximately $158,000. The boat was named for his wife the "Dorothy H." Petitioner at the time had no resources of his own. His father loaned him $30,000 in cash to make the initial payment on the boat. Petitioner executed and delivered to his father three promissory notes in the amounts of $12,000, $10,000 and $8,000, respectively. Upon the completion of the boat, petitioner, with his father as a co-maker, executed notes for the balance of the cost. In April 1938, the boat was put in commission, hauling gasoline for the Gulf Oil Company and the Gulf Refining Company, and has been exclusively *93 in that employment ever since. The acquisition cost of the "Dorothy H." was paid off in full sometime in 1940 from earnings of the boat. Petitioner, upon starting operations, opened and carried on a bank account in the name of "Towboat Dorothy H." although the business was conducted under the name "Hougland's". Sometime the latter part of 1938 or the forepart of 1939, petitioner's father suggested to him that he would like petitioner's mother to have an interest in the boat and its business. On August 7, 1939, at petitioner's direction, his attorneys prepared a "Bill of Sale" which was executed by petitioner purporting to transfer to his mother a one-half interest in the boat and its business at a price calculated to represent one-half of the cost of the boat less depreciation to the date of the sale. Both before and after the sale, petitioner's mother answered some telephone calls and telegrams since the business was operated from her home. The mother had no funds of her own and it was understood that she was to execute her note for the purchase price, assume joint liability on the three notes aggregating $30,000, given by petitioner to his father, and two other notes in the respective *94 amounts of $5,000 and $3,871.59, which were payable at the American National Bank of Nashville. It was also understood that the mother's obligation would be discharged out of her share of the earnings of the business. Thereupon petitioner's mother executed her note to him in the amount of $54,069.27, due one year from date with six per cent interest. At the time of the sale it was the understanding of the parties that petitioner was to manage the business, and that until the debts were paid there should be no salaries and that the drawings of the partners should be kept at a minimum. No written partnership agreement was entered into. From August 7, 1939 to the end of that calendar year petitioner and his mother each reported one-half of the net income of the business for tax purposes. Shortly after petitioner married, his wife, Dorothy, commenced work in his father's business as a bookkeeper. She had had no practical experience or training and her bookkeeping was of the crudest sort and not in accordance with good accounting practice. After petitioner started his operations with the towboat "Dorothy H.", petitioner's wife also looked after his bookkeeping. For her services as bookkeeper *95 she received a salary, the amount of which was divided between the two businesses. On January 1, 1940, petitioner and his mother executed a "Bill of Sale" transferring to petitioner's wife a one-third interest in "Hougland's", and its assets, which at the time consisted of the "Dorothy H." and a small tender, at a price equivalent to one-third of the depreciated cost of that equipment. Dorothy had no funds of her own with which to pay the purchase price of such third interest, and it was understood that she should pay for the same out of her part of the earnings of the business. Dorothy thereupon executed to petitioner and his mother her note for $39,131.66, due one year after date with six per cent interest, representing one-third of that portion of the depreciated cost of the equipment which had been fully paid. She also assumed joint liability with petitioner and his mother for the notes representing that part of the cost of the equipment then unpaid. At the time this transaction occurred it was understood that no salaries would be paid; that personal drawings would be held to a minimum: and that petitioner would continue to manage the business. Prior to that time Dorothy prepared *96 the checks which were signed by petitioner; but afterwards she was authorized to, and did, sign 90 per cent of the checks. Sometime in 1940 she ceased keeping books for "Hougland's" and for the Estate of Walter G. Hougland. For the calendar year 1940, petitioner, his mother and his wife, Dorothy, each reported and paid income taxes on one-third the net income of "Hougland's". Sometime in 1940 a contract was made with the Nashville Bridge Company for the construction of another towboat to be known as the "Walter G." A substantial cash payment was made out of the earnings of "Hougland's". When this boat was completed, petitioner, his mother, and Dorothy executed their joint note to the Nashville Bridge Company for $125,000, payable in monthly installments of $5,000 each, and a note for $4,502.28, the aggregate of these two notes representing the unpaid part of the cost of the boat. These notes were paid off out of "Hougland's earnings by August 3, 1943. Up to that date, except for relatively small personal drawings, substantially all the net income of "Hougland's" was applied to the payment of the notes executed for equipment, and to the payment of the income taxes of the three individuals. *97 Neither petitioner's wife nor mother had income from "Hougland's" to apply upon their individual notes executed by them for the acquisition of their respective interests. In 1939 and until they were divorced in 1944, petitioner and his wife resided in his mother's home and the household expenses were paid out of funds withdrawn from "Hougland's" on the agreed basis of two-thirds for petitioner and one-third for his mother. The office of "Hougland's" was at the home of petitioner. Petitioner's father died on November 7, 1939. Under his will, petitioner received 2/5ths, his mother, 1/5th, and James Hougland, a son by the first marriage, 2/5ths of the entire estate, including his river craft and business. The river transportation business of the decedent was conducted by his estate until the estate was finally settled on October 3, 1940. Upon the final settlement of the estate, the business was conducted by a partnership under the name of "Walter G. Hougland Sons" under the management of the petitioner. The partners were petitioner, his mother, and James Hougland, a son of Walter G. Hougland by a prior marriage. Each had the same interest in that partnership as they had received under *98 the will. James Hougland died in 1940 and his 2/5ths interest was divided between his widow and their two children, each taking a two-fifteenths interest in the partnership. On January 1, 1941, petitioner, with the consent of his other partners, transferred to his wife, Dorothy, one-half of his two-fifths interest in the partnership and assets of "Walter G. Hougland Sons" for $42,325.25. Dorothy executed and delivered her demand note for $42,325.25, with the understanding that the note was to be paid off out of her interest in the earnings of the partnership. As of February 12, 1945, all of that note except $8,500 had been so paid. The bona fides of this latter partnership is not in issue. In 1943, marital dissension developed between petitioner and his wife, Dorothy, and they concluded to, and did, separate. An agreement in settlement of the wife's property rights was executed on December 15, 1943. The agreement contemplated a divorce, and the parties shortly thereafter were divorced and the custody of their three minor children was awarded to the wife. In the property settlement it was finally agreed that petitioner would pay the $150,000 demanded by Dorothy, with the proviso *99 that Dorothy would make provision for the children by placing her interest in "Hougland's" and "Walter G. Hougland Sons" in trust for that purpose. Dorothy consented on condition that she be personally released from all obligations she had incurred in acquiring her interest in the two aforementioned businesses, and her liability transferred to the trust estate. Petitioner and his mother, at the same time, executed and delivered to Dorothy separate instruments releasing her from all personal liability in respect of the obligations she had assumed in connection with the acquisition of such businesses. It was the purpose of both attorneys representing the respective parties, in preparing the trust instrument, to protect, as far as reasonably could be done, the interests of the three infant children. It was for this reason that the trust instrument provided that the interest in the businesses constituting the trust fund could not be sold without the consent of the petitioner, if living; that the reinvestment of the proceeds of any such sale must be with his approval, and that the income of the trust could not be borrowed against for the purpose of acquiring a residence for Dorothy and *100 the children without his written consent. Dorothy was named as trustee of the trust and, on account of her youth and lack of business experience, the attorneys felt that the foregoing provisions would tend to safeguard the integrity of the trust funds. The trust instrument provided that in the event of the death of Dorothy, petitioner, if living, should nominate her successor. This provision was not inserted in response to any claim of right on the part of petitioner, but because the attorneys considered that, as father of the children, he would be the proper person to name such successor. The trust was to terminate on the date the youngest of the three children became 21 years of age or, if he should die before reaching that age, then on the date the youngest living child should become that age. In the event all three children should die before reaching the age of 21, the trust was to terminate and the trust property was to vest in the petitioner, if living, or if dead, in his heirs. The partnership return filed under the name "Hougland's" for the year 1940 disclosed a net income of $94,834.62, allocated equally among petitioner, his mother and his wife. These three individuals, *101 in each of their separate income tax returns, reported the receipt of $31,611.54. Their returns disclosed income tax liabilities as follows: petitioner, $8,158.92; his mother, $8,096.58; and his wife, $6,872.15. These amounts were paid by "Hougland's" during the year 1941, in four equal installments on or about the respective due dates and were charged to the accounts of those individuals. The respondent included all the income of "Hougland's" for the year 1940 in petitioner's taxable income, under section 22 (a) of the Internal Revenue Code, on the ground that "Hougland's" was not a bona fide partnership for income tax purposes. Depreciation Issue The parties orally stipulated on the trial the acquisition cost and the date of acquisition of each depreciable asset involved in the respective cases, leaving in controversy the useful life of each item. The following schedule shows: (a) the specific depreciable assets owned and used in the business carried on by "Hougland's", Estate of Walter G. Hougland, and Walter G. Hougland Sons, during the taxable years 1940; (b) the original date of acquisition; (c) cost; (d) the amount of deduction for depreciation allowed *102 by respondent; (e) total estimated useful life, as determined by respondent; and (f) the useful life as claimed by the respective petitioners. (a)
(b)
(c)
(d)
(e)
(f)
Total
estimated
Depre-
life as
Useful
ciation
determined
life as
allowed by
by re-
alleged by
Date of
respondent
spondent
petitioners
Asset
acquisition
Cost
(1940)
(Years)
(Years)
Towboat, Dorothy H.
4-1-38
$156,885.95
$3,844.17
40
25
Tender, Little Dorothy
4-1-39
1,550.00
102.26
15
8
Towboat, Wayne M.
6-28-40
3,156.49
105.22
15
8
Automobile
8-8-39
1,388.38
144.62
Automobile
6-1-40
1,899.14
221.57
5
4
Total depreciation claimed
$7,088.01
Total depreciation allowed by respondent
4,417.84
Depreciation disallowed
$2,670.17
(Estate of W. G. Hougland
and
Walter G. Hougland Sons)
Towboat, Helen H.
1930
$ 46,000.00
$ 593.33
40
25
Towboat, Bob Gresham
1933
50,000.00
1,051.77
40
25
Towboat, Little Eddie
1934
13,000.00
414.28
20
10
Towboat, Walter Jr.
20.85
Barge No. 1
5-1-36
27,500.00
610.27
30
25
Barge No. 2
5-1-36
27,500.00
610.27
30
25
Barge No. 4
7-1-36
11,000.00
305.13
30
25
Barge No. 5
1939
30,000.00
1,027.59
30
25
Barge No. 6
1939
30,000.00
1,027.59
30
25
Barge No. 7
9-18-40
47,963.04
399.69
30
25
Barge No. 8
9-18-40
47,963.04
399.69
30
25
Towboat, James H.
8-28-40
125,422.96
1,045.20
40
25
16feet Speed Boat
8-1-40
615.00
32.03
8
28
Total depreciation allowed by respondent to both
the Estate of W. G. Hougland and Walter G.
Hougland Sons for 1940 (full year)
$7,537.69
*103 Petitioner offered no proof as to the useful life of the tenders "Little Dorothy" and "Wayne H." or the automobiles owned by "Hougland's". No proof was offered as to the useful life of the towboat "Little Eddie" owned by the Estate of W. G. Hougland, and later in the same year by W. G. Hougland Sons. Substantially all the equipment involved in the depreciation issue was built by the Nashville Bridge Company. Harry B. Dyer, vice-president of that company, who has been connected with the company since 1921, and who was in charge of the design, construction and sales of all the marine equipment produced by the company from 1924 to 1928, testified for petitioner. Basing his opinion on the character of the equipment, the specific waters in which they were operated, the kind of cargo carried and the manner in which they were maintained, he fixed the useful life of the hull and cabin of the towboat "Dorothy H.", belonging to "Hougland's", and of the towboats "Helen H.", "Bob Gresham" and "James H.", belonging to Walter G. Hougland Sons, respectively, at from 20 to 25 years. He fixed the useful life of the Deisel power unit and machinery as about 1/2 the hull and cabin, or from 10 to 12 *104 1/2 years. He stated the cost of the power unit and machinery was approximately 50 per cent of the total cost. He also fixed the useful life of the seven steel barges owned by Walter G. Hougland Sons in 1940 at 20 years. Petitioner's testimony corroborated in all respects that of the witness Dyer. The respondent offered no proof except that developed on his cross examination of petitioner's witnesses. We find as a fact that as to those depreciable assets respecting which petitioners have offered testimony, their useful life was not greater than the periods claimed by the petitionrs. Opinion The principal controversy involves the question of whether all the income from the business carried on by "Hougland's" in the year 1940 is taxable to the petitioner, Walter G. Hougland, Jr., under section 22 (a) of the Internal Revenue Code. It is petitioners' position that throughout the year 1940, "Hougland's" was a valid partnership, for Federal income tax purposes, in which Walter G. Hougland, Jr., his mother, McGhee Hougland, and his wife, Dorothy, each owned a one-third interest. The respondent contends that the evidence does not establish the existence of any such *105 partnership. We agree with the respondent. The issue here involves only the determination of Federal income taxes, and the question, therefore, is: Who earned the income upon which the disputed taxes were imposed? The answer to that query depends on whether Walter G. Hougland, Jr., his mother and wife really intended to carry on business as a partnership. Commissioner v. Tower, 327 U.S. 280 (Feb. 25, 1946). And, where the members of an immediate family unit enter into a partnership arrangement and the capital invested in the business originates with only one member of the unit, who has the only voice in the management and control of the business, and the others contribute no vital services to its operation, the rule is now clearly established that, in such circumstances, a real partnership does not exist in so far as the Federal income tax law is concerned. Commissioner v. Tower, supra; Lusthaus v. Commissioner, 327 U.S. 280, (Feb. 25, 1946); Ed. Dubinsky Durwood, 6 T.C. 682; Floyd D. Akers, 6 T.C. 693; Abe Schreiber, 6 T.C. 707; Lewis Coleman Benson, 6 T.C. 748; John Lang, 7 T.C. 6 *106 (June 4, 1946); W. A. Belcher, 7 T.C. 182 (June 19, 1946); John G. Scherf, 7 T.C. 346 (July 11, 1946). That, for all practical purposes, is the situation here. The so-called "partners" were members of an immediate family unit. No capital originating with either the mother or the wife was contributed. This conclusion is not affected by the fact that the notes given by the mother, McGhee Hougland, and Dorothy, petitioner Walter G. Hougland, Jr's wife, in consideration of the transfer to them of their respective interests in the business, were payable only out of the profits of the business. Singletary v. Commissioner, 155 Fed. (2d) 207 (May 14, 1946). Nor, and we do not understand that petitioners contend otherwise, were any vital or even substantial services contributed by either the mother or the wife. The income from the business, except for small amounts drawn for family expenses, was applied to the discharge of petitioners' liability incurred for the acquisition of equipment for the business and to the discharge of income tax liability on the net income of the business. Respondent, we think, properly included all the net income of "Hougland's" *107 for the taxable year 1940 in the gross income of the petitioner, Walter G. Hougland, Jr. The remaining issue relates to depreciation and the only question left for our determination is the useful life of the depreciable assets involved in Docket Nos. 4564 and 4565. The original cost and the date of acquisition were covered by oral stipulation made at the hearing. Petitioner claim the useful life of certain of the towboats and the barges involved was 25 years. To substantiate this claim, petitioners offered expert testimony from such a reliable source and of such a qualitative character as to establish to our satisfaction that the probable useful life was not greater than 25 years. In his deficiency notice, the respondent determined the useful life of the towboats to be 40 years, and that of the barges, 30 years, and allowed depreciation accordingly. No testimony was offered to substantiate his position. Thus we have found as a fact that the allowable depreciation should be determined upon a useful life of 25 years. As to certain depreciable assets the petitioners offered no proof, and as to these specific items, set forth in our findings, the respondent's determination is sustained. *108 Since petitioners in the respective transferee proceedings concede individual liability. Decisions in all docket numbers will be entered under Rule 50.